1 of 2 DOCUMENTS

SHARON SHEPHERD, Plaintiff, vs. METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

Case No. C-3-93-329

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

1995 U.S. Dist. LEXIS 22203

March 9, 1995, Decided
March 10, 1995, Filed

**DISPOSITION:** [*1] Defendant's Motion for Summary Judgment (Doc. # 10) sustained. Judgment entered in favor of the Defendant and against the Plaintiff. Cause terminated.

**LexisNexis (TM) HEADNOTES- Core Concepts:**

**COUNSEL:** For SHARON SHEPHERD, plaintiff: Mark Raymond Simendinger, Lebanon, OH.

For METROPOLITAN LIFE INSURANCE COMPANY, defendant: Joan A Heffernan, Taft Stettinius & Hollister, Cincinnati, OH.

**JUDGES:** WALTER HERBERT RICE, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** WALTER HERBERT RICE

**OPINION:**

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

I. Factual Background and Procedural Posture

This case arises from the death of Gary D. Shepherd. Mr. Shepherd died on January 28, 1992, of "acute multiple drug intoxication (heroin, oxycodone, cocaine, and diazepam)." Doc. # 10, exh. D (coroner's report). n1 The Plaintiff, Sharon Shepherd, is Mr. Shepherd's widow. She is also the beneficiary of Mr. Shepherd's life insurance policy, which he held through a benefit plan which was established by his former employer, General Motors, and is administered (as to claims) by the Defendant, Metropolitan Life Insurance Company ("MetLife"). Affidavit of Susan [*2] McCormack (attached to Doc. # 10) (hereinafter "McCormack") at paras. 3, 4, 8. Although MetLife paid $30,000 in "Basic Life" benefits to Mrs. Shepherd on her husband's death, it refused to pay to her $15,000 in "Extra Accident" benefits, having determined that the circumstances of Mr. Shepherd's death did not warrant such payment under the terms of the insurance policy. Id. at paras. 9 - 14, and exhibits cited therein. Mrs. Shepherd now brings suit, claiming that she is entitled to the "Extra Accident" benefits. This suit was originally brought in the Montgomery County Court of Common Pleas, and was properly removed to this Court on the basis of ERISA preemption. See Doc. # 10 at 6 - 7 (brief of Defendant, describing ERISA preemption); Doc. # 13 at 2 (brief of Plaintiff, conceding ERISA preemption and propriety of removal).

> n1 Oxycodone and diazepam are active ingredients in the drugs commonly known as Percodan and Valium, respectively.

MetLife has moved for summary judgment. Doc. # 10. Its argument is [*3] that Mr. Shepherd's death was not accidental within the meaning of the policy, and that Mr. Shepherd's death resulted from self-inflicted injury, which circumstance is explicitly excluded from accident coverage. Mrs. Shepherd argues that there exists a genuine issue of material fact as to whether Mr. Shepherd's death was, indeed, accidental, and as to whether it was the result of self-inflicted injury within the meaning of the policy.

II. The Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

  

Case 1:02-cv-00147-SSB-TSH   Document 24-3   Filed 09/11/2003   Page 2 of 5

Page 2
1995 U.S. Dist. LEXIS 22203, *3

and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323. See also [*4] Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial." quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 [6th Cir. 1987]). The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (quoting Fed.R.Civ.P. 56(e)). Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous [*5] allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). Rather, Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "if there are . . .'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor [*6] of that party. Anderson, 477 U.S. at 255 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). See also, L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561, 1993 U.S. App. LEXIS 26670 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832, 113 S. Ct. 98, 121 L. Ed. 2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition [*7] to summary judgment ...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

III. Standard of Review of MetLife's Decision to Deny Benefits

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989), the Supreme Court held that "a denial of benefits challenged under [ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." MetLife has submitted unrebutted affidavit testimony that "General Motors . . . has delegated to and vested in MetLife, as the claims fiduciary, the discretionary authority to determine life insurance benefit claim eligibility and entitlement[.]" McCormack at para. 4.

Where the benefit plan does vest discretionary authority in the plan fiduciary, the Court reviews the fiduciary's decision to deny [*8] benefits for an abuse of discretion. Bruch, 489 U.S. at 111; Baker v. UMWA Health and Retirement Funds, 929 F.2d 1140, 1144 (6th

  

Cir. 1991) (citing Bruch). "In such circumstances the trustee's [decision] will not be disturbed if reasonable." Bruch, 489 U.S. at 111 (citation omitted). A discretionary decision so made will "be upheld if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Baker, 929 F.2d at 1144.

Thus, on this motion for summary judgment, the Court views the parties' burdens as follows. It is MetLife's responsibility initially to set forth, through competent Rule 56 evidence, its reasoning process and the evidence that supported its decision. In doing so, MetLife is, essentially, asserting that there is no genuine issue of material fact as to whether its decision was a reasonable one. The burden then shifts to Mrs. Shepherd to produce Rule 56 evidence that MetLife's process and conclusions were unreasonable under the circumstances; that is to say, MetLife having exposed its reasoning process and underlying basis for its conclusion, Mrs. [*9] Shepherd must attack that process and that basis with evidence that there is some flaw therein resulting from an unreasonable assumption or conclusion. The focal question is whether there is a genuine issue of material fact that, if decided in the Plaintiff's favor, would compel the conclusion that the Defendant had acted unreasonably in denying the benefit.

The parties may note that this Opinion does not draw upon the many cases cited to the Court concerning legal characterizations of arguably self-destructive behavior, including especially Wickman v. Northwestern Nat'l Life Ins. Co., 908 F.2d 1077 (1st Cir.), cert. denied, 498 U.S. 1013, 111 S. Ct. 581, 112 L. Ed. 2d 586 (1991) (discussing the manner in which "accident" should be defined when applied to arguably self-destructive behavior), and Holsinger v. New England Mut. Life Ins. Co., 765 F. Supp. 1279 (E.D.Mich. 1991) (discussing the manner in which "intentionally self-inflicted injury" should be defined). This is simply because the parties are in agreement that this Court is not engaging in a de novo review of MetLife's decision. Because MetLife's decision is reviewed solely for its reasonableness, [*10] the question is whether, once MetLife has set forth the basis for its decision, Mrs. Shepherd can raise a genuine issue of material fact as to whether that decision was reasonable. In the absence of some significant challenge to the underlying reasonableness of its decision-making process and the conclusion thereby reached, MetLife need not resort to comparing its process and conclusions to the tests performed and conclusions reached by the courts in these cases. Mrs. Shepherd's attacks on the applicability of these cases to the captioned litigation is only relevant if she can first succeed in mounting some attack on the facial reasonableness of the process employed and decision reached by MetLife.

IV. Review of the Decision to Deny Benefits

The accident benefit provision of the policy provides that:

> If, while insured for Extra Accident Insurance under the Group Policy, the Employe sustains accidental bodily injuries, and within one year thereafter shall have suffered loss of life . . . , as a direct result of such bodily injuries independently of all other causes, the Insurance Company shall pay the amount of insurance specified . . . , provided, however that in no case [*11] shall such payment be made for any loss which is caused wholly or partly, directly or indirectly, by:
>
> . . .
>
> (5) intentional self-destruction or intentionally self-inflicted injury, while sane or insane.

Doc. # 10, exh. A, at 8.

On May 6, 1992, MetLife sent to Mrs. Shepherd its initial letter denying the accident benefit claim. In the letter, MetLife stated its reason for denial as follows: "According to the information in our file your husband's immediate cause of death was acute multiple drug intoxication (heroin, oxycodone, cocaine and dizepan [sic]) which is to be considered self inflicted in nature." Doc. # 10, exh. J. The letter also informed Mrs. Shepherd that she could "request a review of the claim[,]" stating "the reason for believing the claim was improperly denied" and submitting "any data, questions, or comments to [MetLife] you deem appropriate." Id.

Mrs. Shepherd did request a review of the denial of the claim. In a letter dated May 18, 1992, Mrs. Shepherd wrote: "The overdose was considered self inflicted. However, after a thorough investigation by the coroner, this death was ruled accidental and not suicidal. It appears to me that your [*12] company is basing your decision on death by suicide, not accidental death." Doc. # 10, exh. K. n2

> n2 Mrs. Shepherd also asserted that death was not due to disease or bodily infirmity. Although MetLife's letter of May 6 mentioned disease or bodily infirmity, there does not appear to be any dispute herein on that point. That is, it does not appear that MetLife is asserting that Mr. Shepherd's

  

death was caused by disease or bodily infirmity.

On September 23, 1992, MetLife sent another letter to Mrs. Shepherd, reaffirming its decision to deny the benefits and clarifying its reason for that denial. That letter states:

> Under the terms of the GM Plan, 'Extra Accident benefits are paid provided the death or loss is not caused wholly or partly, directly or indirectly by . . . . intentional self destruction or intentionally self-inflicted injury, while sane or insane.' Evidence indicates that Mr. Shepherd voluntarily took drugs that caused his death. Therefore, his death cannot be considered an accident under [*13] the terms of the GM Plan.

Doc. # 10, exh. N (emphasis in original).

Thus, in response to Mrs. Shepherd's assertion that MetLife appeared to be improperly considering Mr. Shepherd's death a suicide, MetLife clarified that the basis for the denial of benefits was the "intentionally self-inflicted injury" provision. n3 There is a difference between these two rationales. Suicide may reasonably be defined as the intentional taking of one's own life. An intentionally self-inflicted injury that results in death is not necessarily a suicide. The following example is provided, not to be trite, but to illustrate this difference. An insured might so wish to avoid continuing in his job that he plans to shoot himself in the foot, thus intending to render himself unable to work, but yet alive. Said insured might well communicate his scheme to others (co-workers, friends, family), making very clear that he has every intention of surviving the planned injury and enjoying his subsequent time away from the job. One morning, home alone, he decides to carry out his plan. However, upon successfully shooting himself in the foot, the insured loses consciousness due to the extreme pain and the [*14] gruesome sight of his damaged appendage. Unfortunately, no one hears the shot, and no one returns to the home to discover the insured until many hours have passed, during which time the insured has bled to death for failure to treat his self-inflicted wound. Under such circumstances, the insured may not have committed suicide, but his death certainly was "caused wholly or partly, directly or indirectly, by . . . [an] intentionally self-inflicted injury[.]" Denial of accident benefits would be appropriate under those circumstances.

n3 In its brief in support of summary judgment, MetLife argues that Mr. Shepherd's death could reasonably be considered non-accidental even absent resort to the "self-inflicted injury" exception. Doc. # 10 at 11 - 17. However, given the language of the September 23 letter quoted above, and given especially the clear emphasis on the self-inflicted injury language, the Court concludes that the reason given by MetLife for the denial of benefits was the self-inflicted injury exception. To argue now a different reasonable basis for the denial of benefits is not to argue that the reasoning actually employed by MetLife in denying the benefits was not an abuse of discretion. This Court focuses its inquiry and review upon the reasoning that the evidence indicates MetLife actually utilized, not upon some alternative possible reasoning that it could have employed. Accordingly, the arguments as to whether the death was accidental, independent of the self-inflicted injury exception, are moot.

[*15]

MetLife's finding in this case is that Mr. Shepherd, in taking heroin, cocaine, oxycodone, and diazepam together as he did, was like the man in the example above who shoots himself in the foot. He may have perceived some beneficial result of his action, and may have intended to live to enjoy it, but the action that he took to achieve that benefit was an intentionally self-inflicted injury that, contrary to his expectations, ultimately resulted in his death. MetLife has set forth, through its Rule 56 evidence, the following syllogism as the basis for its denial of benefits:

> 1) Mr. Shepherd's death was caused by the intentional ingestion of heroin, cocaine, oxycodone, and diazepam.
>
> 2) To ingest heroin, cocaine, oxycodone, and diazepam together is to inflict injury upon oneself.
>
> 3) Therefore, Mr. Shepherd's death was caused by intentionally self-inflicted injury.

As explained above, MetLife having set forth this reasoning process, the burden then falls upon Mrs. Shepherd to attack it, to demonstrate that there is some genuine issue of material fact such that a reasonable finder of fact, reading the evidence most strongly in her favor, could conclude that MetLife's [*16] decision was an unreasonable one. The obvious point at which to direct such an attack is the second statement of the syllogism. Mrs. Shepherd cannot and does not dispute the fact that her husband's death was caused by the inten-





tional ingestion of the controlled substances listed above. Doc. # 13 at 4. She cannot dispute that the policy contains the "intentionally self-inflicted injury" exception quoted above. Therefore, she must, by the use of Rule 56 evidence, raise a genuine issue of material fact as to whether it is reasonable to conclude that the ingestion of that combination of controlled substances constitutes an intentionally self-inflicted injury.

She does not raise such a genuine issue of material fact. Mrs. Shepherd continues to focus her arguments on the question whether Mr. Shepherd intentionally killed himself or should have expected that he would kill himself by taking the drugs he took. n4 Doc. # 13 at 6, 8, and passim (focusing on the risk of death, rather than the risk of injury, from drug abuse). As explained above, this is not the critical question with regard to the self-inflicted injury provision. The relevant question is whether he knew or ought reasonably [*17] have expected some injury, not necessarily death, to result from his action. In fact, Mrs. Shepherd practically concedes this point when she argues that, "While the risks of drug abuse are well publicized, the ruination of minds, health and personal lives are far more profound than the small percentage of drug abusers who actually expire from drug abuse." Id. at 5. This appears to be a concession that, in engaging in drug abuse of the sort that Mr. Shepherd engaged in on the night of his death, any reasonable person would understand that he or she was causing the "ruination" of his or her mind and health, which is precisely the underpinning of the second point of MetLife's syllogism (the point that Mrs. Shepherd must attack, rather than concede like the others). Mrs. Shepherd explicitly asserts as a "question of fact" toward which she points the Court that "the statistical likelihood of death from the effects of tobacco and motor vehicle accidents are probably greater than the risk of death from drug abuse." Id. at 8. Aside from being unsupported by Rule 56 evidence, this assertion misses the point. The question is not the risk of death, it is the risk of injury. The [*18] question is not a comparative one, but rather is confined to the circumstances of the case; was Mr. Shepherd intentionally inflicting injury on himself when he took those drugs? More specifically, the question is whether MetLife's conclusion that Mr. Shepherd was intentionally inflicting injury on himself when he took heroin, cocaine, oxycodone, and diazepam together was a reasonable conclusion. There is no evidence presented to the Court that it was not.

> n4 Although the Court found (see note 3, above) that the arguments as to the definition of "accidental," independent of the self-inflicted injury exception, are not herein relevant, it considers the entirety of the Plaintiff's memorandum to determine whether a genuine issue of material fact is raised as to the self-inflicted injury exception.

Accordingly, the Court must conclude that there is no genuine issue of material fact present in this case. MetLife's decision to deny benefits appears, on the record herein, to have been based on reason [*19] and upon evidence available to it. MetLife's conclusion that Mr. Shepherd's death was caused by an intentionally self-inflicted injury (based on his ingestion of heroin, cocaine, oxycodone, and diazepam) appears to be a reasonable one. Mrs. Shepherd, although arguing that Mr. Shepherd did not expect to die from his actions, has failed to present any evidence to indicate that it was unreasonable of MetLife to have concluded that he could not reasonably have expected that he would not at least have been injured by those actions. There is, therefore, no genuine issue of material fact as to whether MetLife's decision was reasonable. It was reasonable, and therefore not an abuse of discretion, for MetLife to deny the benefits sought in this case.

Wherefore, based upon the aforesaid, the Defendant's Motion for Summary Judgment (Doc. # 10) is sustained. Judgment is to be entered in favor of the Defendant and against the Plaintiff in the captioned cause.

The captioned cause is hereby ordered terminated upon the docket of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

March 9, 1995

WALTER HERBERT RICE

UNITED STATES DISTRICT JUDGE [*20]

