Only the Westlaw citation is currently available.

United States District Court,
S.D. Ohio.
Keith BATES, et al., Plaintiff,
v.
CROWN LIFE INSURANCE CO., Defendant.
No. C-2-83-2154.
March 31, 1987.

MEMORANDUM AND ORDER

HOLSCHUH, J.

*1 Plaintiffs initially brought this action in state court alleging breach of contract, breach of the duty of good faith and fair dealing, and intentional and outrageous conduct on the part of defendant causing plaintiffs embarrassment, mental distress, and mental anguish. Defendant removed the action to this Court on the basis of diversity of citizenship. This matter is presently before the Court on motions for summary judgment filed by both plaintiffs and defendant.

I. STATEMENT OF FACTS

The following facts in this case are undisputed. In 1982 Brian Bates was employed by Cravat Coal Co. As a Cravat employee, Mr. Bates had group life insurance with defendant Crown Life which provided $18,000 basic and $18,000 additional life insurance. The additional insurance was payable in the event of accidental death subject to exclusions as will be set forth later in this Order. The plaintiffs were the beneficiaries of this policy.

On October 20, 1982 Mr. Bates was killed in a single vehicle collision near Freeport, Ohio. While Mr. Bates was at the Emergency Room of the Barnesville Hospital, a blood sample was taken which established that at the time of the accident, Mr. Bates' blood contained a concentration of twenty-one hundredths of one percent (.21%) by weight of alcohol. In the opinion of Mr. Leonard Porter, Chief Toxicologist for the Ohio Department of Health (whose affidavit stands undisputed) "at the time of the accident on October 20, 1982, Brian D. Bates was acutely intoxicated, his ability to operate a motor vehicle was significantly impaired by virtue of the fact that he was acutely intoxicated, and he was operating a motor vehicle under the influence of alcohol in violation of Ohio Rev.Code Ann. § 4511.19." Affidavit of Mr. Porter, Exhibit A to defendant's motion for summary judgment. Defendant paid to plaintiffs the sum of $18,000 but refused to pay the additional $18,000 benefit for accidental death. Plaintiffs then initiated the present action.

II. SUMMARY JUDGMENT

Fed.R.Civ.P. 56(c) provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 54 U.S.L.W. 4755, 4757 (June 25, 1986) (emphasis in original); *Kendall v. The Hoover Co., 751 F.2d 171, 174 (6th Cir.1984)*.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson*, 54 U.S.L.W. at 4757. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir.1978)*. Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, ... [and where] no genuine issue remains for trial, ... [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 467 (1962)*; accord, *County of Oakland v. City of Berkley, 742 F.2d 289, 297 (6th Cir.1984)*.

*2 In making this inquiry the standard to be applied by the Court mirrors the standard for a directed

verdict. *Celotex Corp. v. Catrett*, 54 U.S.L.W. 4775, 4777 (June 25, 1986); *Anderson*, 54 U.S.L.W. at 4758.

The primary difference between the two motions is procedural: summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted. *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745, n. 11 (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex*, 54 U.S.L.W. at 4778 (quoting Fed.R.Civ.P. 1). *Anderson*, 54 U.S.L.W. at 4758.

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (footnote omitted); accord, *Adams v. Union Carbide Corp.*, 737 F.2d 1453, 1455-56 (6th Cir.1984), cert. denied, ___ U.S. ___, 105 S.Ct. 545 (1985). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Association, Inc.*, 630 F.2d 1155, 1158 (6th Cir.1980).

Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. *Adickes*, 398 U.S. at 157-60; *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 54 U.S.L.W. at 4777. The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 54 U.S.L.W. at 4758. As is provided in Fed.R.Civ.P. 56(e):

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*3 Thus, "a party cannot rest on the allegations contained in his ... [pleadings] in opposition to a properly supported motion for summary judgment against him." *First National Bank*, 391 U.S. at 259 (footnote omitted).

With this standard in mind, the Court will now proceed to consider the pending motions.

### III. LEGAL ANALYSIS

Two major issues have been raised by the parties. The first issue is whether Mr. Bates' death was accidental. If so, the second issue is whether coverage still should be denied based upon limitations in the policy. In both instances, the Court is guided by the canon of insurance contract construction that "language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." *Hutchinson v. J.C. Penney Casualty Insurance Co.*, 17 Ohio St.3d 195, 197 (1985) (quoting *Buckeye Union Insurance Co. v. Price*, 39 Ohio St.2d 95 (1974)); see also *Home Indemnity Co. v. Village of Plymouth*, 146 Ohio St. 96 (1945).

### A. ACCIDENTAL DEATH OR BODILY INJURY

The policy provision states, in pertinent part:

If an employee while insured for this benefit [employee accidental death and dismemberment] sustains any *accidental bodily injury* which, independent of all other causes, is the direct cause of any loss shown in the Schedule of Losses and Benefits, ... Crown Life will pay, subject to the provisions of this policy, the amount provided for such loss .... (emphasis added).

Defendant argues that Mr. Bates' death was not accidental because it was the natural result of a voluntary and intentional course of conduct pursued by him, relying upon *Hassay v. Metropolitan Life Insurance Co.*, 140 Ohio St. 266 (1942), The *New Amsterdam Casualty Co. v. Johnson*, 91 Ohio St. 155 (1914), and *Hobbs v. Provident Life & Accident Insurance Co.*, 535 S.W.2d 864 (Tenn.Ct.App.1975) (construing Tenn. law). In each of these cases, however, the courts were

defining death by "accidental means" rather than defining "accidental bodily injury." See *Hassay*, 140 Ohio St. at 267 (defining "bodily injury effected solely through external, violent and accidental means); *New Amsterdam*, 91 Ohio St. at 155 (indemnification "against bodily injuries which, independently of all other causes were effected solely and exclusively by external, violent and accidental means"); *Hobbs*, 535 S.W.2d at 866 ("death is not by accidental means, within the meaning of an insurance policy, if it is the foreseeable result of a voluntary and unnecessary act or course of conduct of the insured.")

Ohio courts, however, distinguish between the terms "accidental means" and "accidental bodily injury or death." See *Hassay*, 140 Ohio St. at 271; *Hirshfelt v. K.C.L. & A. Insurance Co.*, 90 Ohio App. 144, 147 (1951); *Blubaugh v. L.N. Life Insurance Co.*, 84 Ohio App. 202, 204-05 (1948). The difference is as follows:

**\*4** Accidental death is an unintended and undesigned result arising from acts voluntarily done, whereas death by accidental means is a result arising from acts unintentionally done or events undesignedly occurring. The term "accidental means" refers to the occurrence of happening which produces the result: it is concerned with the *cause* of the harm rather than the *character* of the harm. (emphasis added).

10 Couch, *Insurance* 2d ed. § 41.29. As further explained by the Ohio Supreme Court in *Hassay*, "[W]here one of his own volition follows an intended course of conduct, culminating in injury or death, the result may be accidental but not the means. In other words, an effect which ensues as a consequence of a purposed act is not produced by accidental means." *Hassay*, 140 Ohio St. at 271. This distinction was recognized by the Michigan Supreme Court in *Collins v. Nationwide Life Insurance Co.*, 294 N.W.2d 194 (Mich.1980). In *Collins*, the deceased died of acute **alcoholic** intoxication. The **insurance policy** provided coverage for "accidental bodily injuries." The Court of Appeals held that injury resulting from voluntary intoxication did not constitute accidental injury or **death**. The Michigan Supreme Court reversed and remanded to the district court. *Id.* at 195. The Court stated that the appeals court was in error in relying upon cases containing the more restrictive "accidental means" language. "[T]he inquiry is not whether the agency effecting the **death** or injury can be termed accidental,….Rather, the inquiry is whether the injury itself was accidental." *Id.* at 196. The Court held that if a **death** results from the voluntary act of the victim, but the result is unexpected, unanticipated, and unforeseen, it is an accidental **death**. *Id.* at 196-97.

The question is not whether the **death** was reasonably foreseeable, but whether the **death** was in fact foreseen by the insured. In order to defeat recovery under a double indemnity provision, as involved herein, the insured must have intended or expected that his conduct would in all probability result in his **death**. Negligence alone is not sufficient to prevent the **death** from being an **accident** within the meaning of the policy.

*Id.* at 196.

Even in those cases which do not distinguish between the terms "accidental means" and "accidental death," the majority rule has been that the danger inherent in driving while intoxicated is not so foreseeable that the death of a person engaged in such conduct is not accidental within the meaning of an insurance policy. See *Freeman v. Crown Life Insurance Co.*, 580 S.W.3d 897, 899-900 (Tex.1979) and cases cited therein.

While drunken driving is dangerous (and should be prevented) the public still regards such an accident as "accidental." To rule to the contrary is to deny the terminology the ordinary meaning given by the public….

1A Appleman, *Insurance Law & Practice,* § 467, n. 76.25 (Supp.1978).

**\*5** Although the Court has not discovered any recent Ohio Supreme Court decisions dealing with the precise issue before the Court, the Court finds the reasoning in cases such as *Collins* and *Freeman* analogous to that which would be applied by the Ohio Supreme Court in deciding whether Mr. Bates' death should be deemed "accidental" and therefore within the policy's coverage provisions. Although Mr. Bates may have voluntarily engaged in the act of drinking to the point of intoxication, this does not equate with a finding that he intended or expected that his conduct would in all probability result in his death. Defendant has not produced any evidence which raises a question of fact as to this presumption.

Accordingly, the Court finds that Mr. Bates' death was accidental within the terms of the policy.

**B. POLICY LIMITATION**

The Insurance policy in question further provided:

No amount shall be payable under this benefit for any loss which is contributed to by, or is caused directly or indirectly by

...
2. the employee's commission of, or attempt to commit, an assault or any criminal offense.

Defendant argues that there is no coverage in this case because Mr. Bates was committing a criminal offense, *i.e.*, operating a motor vehicle under the influence of alcohol in violation of Ohio Rev.Code § 4511.19, a misdemeanor of the first degree. Defendant further relies upon Ohio Rev.Code § 2901.02 (A) which states that "offenses ... include misdemeanors of the first ... degree." It is undisputed that at the time of his death, Mr. Bates had a blood alcohol level of .21% which would constitute a violation of Ohio Rev.Code § 4511.19.

An insurance company may limit coverage under its policy. These limitations, however, must be clearly expressed and will be construed unfavorably to the insurer in cases of doubt. *Thomas v. First National Life Insurance Co.,* 250 So.2d 42 (La.App.1971). If the language in question is susceptible of more than one meaning, it will be construed liberally in favor of the insured and strictly as against the insurer. *Hutchinson,* 17 Ohio St.3d at 197; *Price,* 39 Ohio St.2d at 99.

It is extremely significant that the exclusion in question does not merely refer to the commission of "any criminal offense." It refers instead to the commission of "an assault or other criminal offense." The drafter of the policy, the insurance carrier, must have attributed some special significance to activities that involve assaults by the specific inclusion of assaults in the language in question. It is fair to assume that assaults might reasonably result in the assaultee inflicting death or serious injury on the insured and, consequently, the insurer desired to exclude such conduct from the coverage. The fact that the insurer included "criminal offense" in the same phrase "assault or any criminal offense" indicates that the conduct involving a "criminal offense" is of the same general character as an assault, *i.e.*, aggressive or violent behavior involving another person or property, although not necessarily a physical assault on a person. For example, an insured who is killed while committing arson or robbing a bank or engaged in other types of assaultive criminal behavior would fall within the exclusionary language.

*6 The Court does not believe that "an assault or other criminal offense" should be so liberally construed as to include *any* type of conduct that might happen to be classified under the state's code as an "offense," including, in this case, the misdemeanor of operating a motor vehicle while under the influence of alcohol. It might be noted that the insurer could have specifically included such conduct in the exclusionary language had it so desired, as the insurer did in *Washington Fidelity National Ins. Co. v. Herbert,* 49 Ohio App. 151 (1934) ("the company would not be liable for accidental death occurring at a time when the insured Herbert was under the influence of an intoxicant, or while violating any law." *Id.* at 152). [FN1]

> FN1. It is significant that among the listed exclusions, in addition to "an assault or any criminal offense," is an exclusion for any loss contributed to by, or caused by, "intentional use of drugs, unless prescribed by and used in accordance with the direction of a physician." While the insurer listed abuse of drugs as an exclusion, it did not list abuse of alcohol.

The Court is in agreement with the reasoning of the court in *Thomas, supra,* in which the policy in question contained virtually the same exclusionary language as the policy in the present case. In that case the pertinent language of the policy read, "This policy does not cover death or injury to the insured ... while fighting, resisting arrest or violating the law." *Id.* at 43. There, as here, the insured violated certain state statutes dealing with the operation of motor vehicles. After pointing out that limitations, exceptions, and exclusions in an insurance policy are to be strictly construed, the Court said:

To hold as counsel for defendant would have us do would not appear to be the intention of the parties to the insurance contract, that a violation of the law was to include a violation of provisions such as LSA-R.S. 32:104 or LSA-R.S. 32:101. The trial court, in its written reasons for judgment, made reference to the doctrine of "ejusdem generis" as supporting this conclusion and used the definition given in Vol. 14 Words and Phrases, page 203, as follows:

The principle of 'ejusdem generis', as applied to the construction of an insurance policy, is that when policy is ambiguous and is to be strictly construed against insurer and when there is an enumeration of a particular class of things followed immediately by general words descriptive of a class which

might add things of the same general nature or things not of the same general nature, the general words are restricted to a sense analogous to that of the less general, when meaning is not otherwise clear and to do so would observe the duty of strict construction required * * *.

...

We hold, as did the trial court, that the policy in question should be interpreted so that a violation of the law refers back to the more descriptive phrases of law violations such as fighting and resisting arrest, and thus was intended to mean a violation of the law in similar matters.

Id. at 44.

Defendant's argument that "criminal offense" should be divorced from "assault" and should include any type of activity so long as it is found in Ohio's statutes as a felony or a misdemeanor would lead to denial of coverage in many cases involving relatively minor traffic offenses. For example, if it could be shown, as in the present case, that a decedent was operating his motor vehicle at the time of a collision in excess of the speed limit, a misdemeanor under Ohio law, he would have been committing a "criminal offense," and if the death was the result--"directly or indirectly"--from exceeding the speed limit, the exclusion would apply. The Court does not believe that a reasonable person in the position of an insured would understand "criminal offense" to include any and all violations of statutes dealing with the operation of motor vehicles.

*7 The only authority cited by defendant in support of its argument is Runyon v. Western & Southern Life Ins. Co., 48 Ohio App. 251, 192 N.E. 882 (1934), a decision rendered over 50 years by an Ohio appellate court and which dealt with a question of policy interpretation that is not involved in this case. In Runyon, the exclusion was for death "caused by, or be attributed to as the result, directly or indirectly, of any violation of law by the insured." Id. at 252. The insured had been convicted of a felony, and while imprisoned in the Ohio penitentiary he suffered fatal injuries in a fire at the penitentiary. There was no issue concerning the insured's having committed a "violation of law," as those words appeared in the exclusionary language, by the commission of a felony; the only issue was whether his death was "indirectly" the result of that violation of the law. The Court held that the decedent would not have been at the penitentiary and subjected to the hazard of the fire if he had not violated the law, and that therefore his violation of the law was the "indirect cause" of his death. Id. at 254.

It is not necessary to decide whether this Court or the Ohio Supreme Court, if presented the same facts, would reach the same result as did the state appellate court in the Runyon case. The issues in that case are completely different from those in the case now under consideration. In the present case the primary issue is whether certain conduct constitutes a "criminal offense" under the policy--a question not involved or in dispute in Runyon. The Court finds that the decedent's activity did not constitute a "criminal offense" as that term is used in the policy.

IV. CONCLUSION

For the above reasons, the motion of defendant for summary judgment is DENIED, and the motion of plaintiff for summary judgment is GRANTED. Judgment is hereby entered in favor of plaintiff in the amount of $18,000, together with interest at the judgment rate.

IT IS SO ORDERED.

S.D.Ohio,1987.
Bates v. Crown Life Ins. Co.
1987 WL 862369 (S.D.Ohio)
END OF DOCUMENT

Copr. (C) West 2003 No Claim to Orig. U.S. Govt. Works