```
         IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

Debora A. Boone, Administrix    )
of the Estate of Craig S.       )
Hutchinson,                     )
                                )
            Plaintiff,          )   Case No. 1:02-CV-147
                                )
       vs.                      )
                                )
American United Life            )
Insurance Company,              )
                                )
                                )
            Defendant.          )

O R D E R

This matter is before the Court on Defendant American United Life Insurance Company's motion for judgment on the administrative record (Doc. No. 23). For the reasons set forth below, Defendant's motion is not well-taken and is **DENIED**. The Clerk of Court is directed to enter judgment on the administrative record on behalf of Plaintiff.

I. Background

Plaintiff's decedent, Craig S. Hutchinson, was an insured under a group life insurance and accidental death and dismemberment policy through his employer, Panel-Fab, Inc. Defendant American United Life Insurance Company ("AUL") issued the policy. The policy pays a base death benefit of $100,000, and if death was accidental, the policy pays an additional benefit of $100,000. The policy also contains limitations of coverage. As is relevant in this case, the accidental death and

dismemberment benefit is not payable if death was caused by the voluntary taking of a prescription drug in manner other than as prescribed by a physician, or the voluntary taking of an controlled substance in an unlawful manner.  <u>See</u> Complaint, Insurance Policy, at A-25.

Craig Hutchinson died on October 9, 2000.  A.R. (Doc. No. 20), at 00120.  A police investigation found no signs that Craig was killed in a violent confrontation.  <u>Id.</u> at 000093.  During an autopsy performed the following day, the coroner found that Craig's blood alcohol concentration ("BAC") was .322%.  <u>Id.</u> at 000100.  Also present in Craig's bloodstream were diazepam (valium) and nordiazepam, an active metabolite of diazepam.  <u>Id.</u> at 000094.  The coroner later concluded that the levels of diazepam and nordiazepam were low and that they did not contribute to Craig's death.  <u>Id.</u> at 000060.  The coroner ruled that the cause of Craig's death was acute ethanol toxicity.  <u>Id.</u> at 000095.

Plaintiff filed a claim for death benefits and accidental death and dismemberment benefits pursuant to the policy.  AUL has paid the base death benefit of $100,000 but has not paid any benefits pursuant to the accidental death and dismemberment provision.  AUL denied coverage under the policy on two grounds: 1) Craig voluntarily took a prescription drug in a manner other than as prescribed by a physician (combining valium

and alcohol); and 2) Craig voluntarily took a controlled substance in an unlawful manner (his BAC was above the legal limit for driving in Ohio). In addition, AUL now argues that Craig's death was not accidental because he voluntarily consumed the alcohol which led to his death.

Plaintiff initially filed suit to recover accidental death and dismemberment benefits in the Brown County, Ohio Court of Common Pleas. The complaint asserted state law claims for breach of contract and bad faith handling of an insurance claim. AUL then removed the case to federal court on the grounds that Plaintiff's claims are completely preempted by ERISA in that the complaint seeks benefits from an ERISA welfare benefit plan. Upon Magistrate Judge Hogan's Report and Recommendation (Doc. No. 13), the Court entered an order (Doc. No. 14) which ruled that the policy at issue is part of an ERISA plan and that Plaintiff's state law claims are therefore completely preempted by ERISA. The Court also struck Plaintiff's jury demand. The parties then filed the administrative record (Doc. No. 20) and have stipulated that the Court's review of Plaintiff's claim for accidental death and dismemberment benefits is de novo. See Doc. No. 22.

II. Analysis

Because the insurance policy in this case is governed by ERISA, the Court applies federal common law rules of contract interpretation in making its determination. Pitcher v. Principal

3

Mut. Life Ins. Co., 93 F.3d 407, 411 (7th Cir. 1996).  The general principles of contract law dictate that the Court interpret the policy's provisions according to their plain meaning, in an ordinary and popular sense.  Regents of the Univ. of Michigan v. Agency Rent-A-Car, 122 F.3d 336, 339 (6th Cir. 1997).  Other courts agree with this plain meaning approach to interpretation of ERISA contract provisions.  Pitcher, 93 F.3d at 411 (interpreting ERISA-regulated policy "[i]n an ordinary and popular sense as would a person of average intelligence and experience . . . .'")(quoting Meredith v. Allsteel, Inc., 11 F.3d 1354, 1358 (7th Cir. 1993)); Bartlett v. Martin Marietta Operations Support, Inc. Life Ins. Plan, 38 F.3d 514, 517 (10th Cir. 1994) (applying plain meaning analysis); Hughes v. Boston Mut. Life Ins. Co., 26 F.3d 264, 268 (1st Cir. 1994) (giving language in an ERISA-regulated insurance policy its "natural meaning").  In applying this plain meaning analysis, the Court "must give effect to the unambiguous terms of an ERISA plan." Lake v. Metropolitan Life Ins. Co., 73 F.3d 1372, 1379 (6th Cir. 1996).  In light of these standards and the Court's de novo review of the administrative record and the plain language of the policy, the Court concludes that Plaintiff is entitled to payment of benefits pursuant to the accidental death and dismemberment provision.

AUL's first two arguments against coverage under the

policy are dispensed with easily.  Although the policy clearly excludes coverage where death is caused by taking a prescription drug in a manner not prescribed by a physician, the only medical evidence in the record, the coroner's report, shows that although alcohol and valium were present in Craig's bloodstream, the valium did not contribute to his death.  A.R. at 000060.  Therefore, the record establishes that although Craig took valium in a manner not prescribed by a physician, this act was not the cause of the loss, either directly or indirectly.  Consequently, this exclusion is not a basis upon which AUL can deny coverage under the policy.

Similarly, AUL's contention that coverage can be denied because Craig took a controlled substance in an unlawful manner is not well-taken.  Assuming that alcohol is a controlled substance, AUL's argument would have some merit if Craig had died in a drunk driving accident.  The record, however, establishes that Craig died in a private residence.  A.R. at 000093.  Like Plaintiff, the Court finds no state or federal provision making it unlawful for a person to have a BAC above the legal limit for driving if one is not driving and in fact is at a private location.  Moreover, the case law in Ohio shows that the BAC level established for purposes of the offense driving under the influence of alcohol has no application beyond the realm of motor vehicle offenses.  <u>McKeehan v. American Family Life Assurance</u>

Co., __N.E.2d__, No. C-030280, 2004 WL 315221, at *2 (Ohio Ct. App. Feb. 20, 2004); State v. Kuhn, No. 94CA24, 1996 WL 140197, at *4 (Ohio Ct. App. Mar. 25, 1996)("Those limits [in Ohio Rev. Code § 4511.19] do not (1) create an arbitrary legal definition of intoxication, or (2) apply in any other context beyond the operation of a motor vehicle."). Therefore, under the circumstances of this case, having a BAC above the legal limit for driving in Ohio is not the equivalent of consuming a controlled substance in an unlawful manner under the terms of this policy.

A better argument for AUL is that Craig's death was not accidental at all, but rather the consequence of voluntarily undertaken conduct. The Court notes that the only relevant definitions provided by the policy regarding the meaning of accident or accidental are as follows: "ACCIDENTAL BODILY INJURY means an injury occurring as the result of an accident, either directly or indirectly, along with the related conditions, sustained by a Person while insured under the policy;" and "ACCIDENTAL DEATH means death directly due to an accident and independent of all other causes." Although the policy defines "accidental death" as death caused by an accident, it provides no further illumination on what constitutes an "accident." Therefore, it falls to the Court to give meaning to the word "accident."

Earlier case law interpreting accidental death policies created a dichotomy between death caused by "accidental means" and death from "accidental results." An example of death by "accidental means" would be a pedestrian being struck by an automobile in the crosswalk. Death by accidental means was deemed to be covered in an accidental death policy. Death by "accidental results" meant that death was the unintended consequence of voluntarily undertaken activity, such as in this case, death as a result of voluntary alcohol consumption. Death from an accidental result was not covered by accidental death policies. See, e.g., Buce v. Allianz Life Ins. Co., 247 F.3d 1133, 1138-46 (11th Cir. 2001) (explaining at length the accidental means/accidental results dichotomy).

Increasingly, however, federal courts presiding over ERISA cases are abandoning the accidental means/accidental results analysis and instead are focusing on the objectively reasonable expectations of a person in the perilous situation in which the decedent had placed himself. See id. at 1146; Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1087-88 (1st Cir. 1990). Under this test, the court first asks whether the insured believed that the conduct at issue would result in the sort of injury that was sustained. Cozzie v. Metropolitan Life Ins. Co., 140 F.3d 1104, 1110 (7th Cir. 1998). If, as is often the case, there is no evidence available on the decedent's subjective

expectations, the court must engage in an objective analysis of the insured's expectations. Wickman, 908 F.2d at 1088. In this analysis, the court considers whether a reasonable person, with the decedent's background and with similar characteristics, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct. Id. If a reasonable person would view the injury as highly likely as a result of the conduct, then death was not accidental. Id. Given that the federal trend appears to be rejection of the accidental means test and adoption of the reasonable expectations test,[1] and that Congress has instructed the federal courts to develop a uniform body of ERISA common law, Auto Owners Ins. Co. v. Thorn Apply Valley, Inc., 31 F.3d 371, 374-75 (6th Cir. 1994), in determining whether Craig's death was the result of an accident, the Court adopts the reasonable expectations test as described in Wickman and Cozzie.

As could be expected, there is no evidence in the

---

[1] In addition to Cozzie and Wickman, for other courts endorsing the reasonable expectations test in interpreting ERISA accidental death policies, see Todd v. AIG Life Ins. Co., 47 F.3d 1448, 1453 n.5, 1456 (5th Cir. 1995)("[M]ost recent cases seem to reject the accidental means distinction[.]"); Padfield v. AIG Life Ins. Co., 290 F.3d 1121, 1126 (9th Cir. 2002); Baker v. Prudential Life & Accident Ins. Co., 171 F.3d 939, 942 (4th Cir. 1999); Metropolitan Life Ins. Co. v. Potter, 992 F. Supp. 717, 729 (D.N.J. 1998); West v. Aetna Life Ins. Co., 171 F. Supp.2d 856, 844-85 (N.D. Iowa 2001)(cataloguing cases and concluding that "Wickman may be treated as a statement of federal common law for the definition of 'accident' under an ERISA plan in which the term is not unambiguously defined.").

administrative record regarding whether Craig had any subjective belief or expectation that consuming alcohol to the point where his BAC reached .322% would result in his death. Thus, the Court is left to determine whether a reasonable person would view death to be the highly likely result of consuming alcohol to the point of a .322% BAC.

The Court notes that according to the U.S. Department of Health and Human Services and the National Institutes of Health, a BAC of .30% produces confusion, a BAC of .40% leads to stupor, a BAC of .50% is associated with coma, and a BAC of .60% results in paralysis and death. See MEDLINE MEDICAL USE ENCYCLOPEDIA, Alcohol Use, available at, http://nlm.nih.gov/medlineplus/ency/article/001944.thm. In this case, the BAC determined by the coroner, .322%, was much nearer the level which produces only confusion, .30%, and fairly remote from the levels which would be expected to produce serious injury or death, .50% and .60%, respectively. Given that death or serious injury from alcohol intoxication is not reasonably likely to occur until the BAC reaches .50%, the Court believes that an objectively reasonable person would not find it highly likely that the voluntary consumption of alcohol to the point of intoxication reflected in Craig's BAC would result in death. Consequently, the Court finds that Craig's death was an accident under the terms of the policy and that, therefore, Plaintiff is entitled to additional

accidental death and dismemberment benefits under the terms of the policy.

Although Plaintiff has not formally filed a motion for judgment in her favor, because the scope of the evidence before the Court is limited to the administrative record, and the Court's review of the record was <u>de novo</u>, the Court finds that this case presents a situation where it may enter judgment against the moving party in the absence of a cross-motion from the other party.  <u>See</u> <u>Seal v. Morgan</u>, 229 F.3d 567, 580 (6th Cir. 2000)("In appropriate circumstances, we acknowledge that a district court may enter summary judgment against the moving party in the absence of a cross-motion."); <u>see</u> <u>also</u> <u>Williams v. International Paper Co.</u>, 227 F.3d 706, 716 & 716 n.6 (6th Cir. 2000).

Accordingly, for the reasons stated above, AUL's motion for judgment on the administrative record is not well-taken and is **DENIED**.  The Clerk of Court is directed to enter judgment on the administrative record on behalf of Plaintiff.  In light of the decision here, the Court directs the parties to file within fifteen (15) days of the date of this order new briefs on the issue whether the Court should award the Plaintiff attorney's fees pursuant to ERISA.  Plaintiff should first file a primary application for attorney's fees with appropriate supporting affidavits, with the remainder of the briefing to proceed

according to Local Rule 7.2(a)(2).

       **IT IS SO ORDERED**

Date  March 16, 2004            s/Sandra S. Beckwith
                                           Sandra S. Beckwith
                                     United States District Judge